UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00007-GNS-HBB

UNITED STATES OF AMERICA
Upon the relation and for the use of the
TENNESEE VALLEY AUTHORITY                                                    PLAINTIFF

v.

AN EASEMENT AND RIGHT-OF WAY OVER
3.11 ACRES OF LAND, MORE OR LESS,
IN WARREN COUNTY, KENTUCKY; and
DAN M. DUVALL and
MARGIE DUVALL, his wife
                                                                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Exclude Expert Testimony filed by Plaintiff, the United States of America upon the relation and for the use of the Tennessee Valley Authority ("TVA"). The motion has been fully briefed and is ripe for decision. For the reasons stated below, the Court **DENIES** TVA's Motion.

### I.   BACKGROUND

This action arises from TVA's taking of an electric power transmission line easement and right-of-way across 3.11 acres of a 32-acre rural tract of land ("the Property") in Warren County, Kentucky, owned by Defendants Dan M. and Margie Duvall ("Duvalls"). (Pl.'s Mot to Exclude Testimony of Defs.' Retained Expert, Steve J. Wilson 2, DN 25 [hereinafter Pl.'s Mot.]). The Property is located approximately 7 miles northeast of Bowling Green's central business district, and is bounded by a highway to the north and west, to the south by a rail line, and to the east by a neighboring farm. (Pl.'s Mot. 2). The Property is situated in proximity to the Kentucky

Transpark, an industrial park developed by the Inter-Modal Transportation Authority. (Pl.'s Mot. 2).

On August 31, 2015, the Duvalls disclosed appraiser Steve J. Wilson ("Wilson") as an expert anticipated to testify at trial. (Pl.'s Mot. 3). Wilson inspected the Property and opined that: (1) the highest and best use of the Property was a "light industrial" use; (2) the pre-taking value of the Property was $984,400; (3) the after-taking value of the Property was $728,400; and 4) damages to the Property resulting from the taking totaled $256,000. (Pl.'s Mot. 3). Wilson was deposed on October 23, 2015, and testified that he determined the Property's value based on a visual inspection. (Pl.'s Mot. 3, 11-12). TVA filed its Motion to Exclude Wilson's testimony on November 2, 2015. (Pl.'s Mot). The Duvalls filed their Response on November 6, 2015. (Defs.' Resp. to Mot. to Exclude Testimony of Expert Appraiser, Steve J. Wilson, DN 27 [hereinafter Defs.' Resp.]). TVA filed its Reply on November 20, 2015. (Pl.'s Reply to Defs.' Resp. to Mot. to Exclude Testimony of Expert Appraiser, Steve J. Wilson, DN 28). This matter is now ripe.

## II. JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under the laws of the United States.

## III. STANDARD OF REVIEW

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods;

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[T]he Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (internal quotation marks omitted) (citation omitted). The Court must determine whether expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). A key consideration is "whether the reasoning or methodology underlying the testimony is scientifically valid . . . ." *Id*. at 592-93. The Supreme Court has found that the inquiry is "a flexible one" and that "[t]he focus must be solely on principles and methodology, not on the conclusions they generate." *Id*. at 594-95.

   A testifying expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). There exists no "definitive checklist or test" for Rule 702. *Id.* at 138 (citation omitted). *Daubert* establishes a number of factors that typically "bear on the inquiry," including: whether the theory or method in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community." *Daubert*, 509 U.S. at 593-94. The *Daubert* factors apply to all types of expert evidence. *Kumho Tire*, 526 U.S. at 150. "In some cases (even cases involving non-scientific expert testimony), the factors may be pertinent, while in other cases 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (quoting *Kumho Tire*, 526 U.S. at 150).

The Sixth Circuit has noted "[r]ed flags that caution against certifying an expert . . . ." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). Such red flags include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* (citing *Best*, 563 F.3d at 177). Where expert testimony is challenged based upon "factual basis, data, principles, methods, or their application . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [his or her] discipline." *Kumho Tire*, 526 U.S. at 149 (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 592). Generally, "a trial judge . . . ha[s] considerable leeway in deciding whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

## IV. DISCUSSION

TVA moves to exclude the opinions of Wilson and preclude him from testifying at trial. (Pl.'s Mot. 1). TVA asserts that Wilson's testimony should be excluded because: (1) his opinion that the highest and best use of the Property as a "light industrial" use does not have a proper basis; (2) his opinion on the use of the Property is not based on sufficient facts or data; and (3) Wilson relied on studies related to agricultural property, rather than industrial property and has only read the summaries of those studies. (Pl.'s Mot. 3-14).

TVA confuses issues of credibility and accuracy with those of relevance and reliability throughout its motion. TVA first questions the credibility of Wilson for his allegedly incorrect opinion that a "light industrial" use is "commercial" and not "farmland." (Pl.'s Mot. 9). Whether Plaintiff's insinuations are correct, it is not the Court's role at this juncture to evaluate the credibility of Wilson's statements or the correctness of his conclusions. *Powell v. Tosh*, 942 F. Supp. 2d 678, 695 (W.D. Ky. 2013) (rejecting a motion to exclude testimony based upon plaintiffs' attack on the correctness of expert's conclusion that hog barns had no effect on

plaintiffs' property value in condemnation action). "Instead, the Court must simply determine whether [the appraiser's] opinions are based on sufficient data and reliable methods, reliably applied." *Id*. Other courts have rejected exclusion of an appraiser when the appraiser's testimony assists the trier of fact in deciding damages in the case. *Adler v. Elk Glenn LLC*, 986 F. Supp. 2d 851, 860 (E.D. Ky. 2013) (citing *Tosh*, 942 F. Supp. 2d at 691-92) (rejecting plaintiff's contention that appraiser's testimony should be excluded because he failed to consider "important factors" that caused damage to appraised home).

      TVA further argues Wilson's testimony should not be considered because the Property could not likely be zoned for a "light industrial purpose." (Pl.'s Mot. 8). Again, as this Court noted in *Tosh* "it is not the Court's role at this juncture to evaluate the credibility" of Wilson nor "the correctness of his conclusions." *Tosh*, 942 F. Supp. 2d at 695. Wilson's testimony is certainly relevant to the issue of damages. Wilson expresses his opinion that the property has potential for light industrial use which makes it understandably more valuable than property without such industrial potential. (Pl.'s Mot. 3; Pl.'s Mem. in Supp. for Entry of Deposit of Funds 1, DN 4-2). Just as the court found in *Adler*, this Court finds that Wilson's testimony is relevant to the issue of damages in this case and must be admitted. *Adler*, 986 F. Supp. 2d at 860 ("Because Nunnery's testimony would aid the jury by clarifying the extent of Adler's damages, it passes Rule 702's relevance test.").

      TVA also claims that Wilson did not utilize a sufficient methodology or consider sufficient data and is therefore unreliable. (Pl.'s Mot. 10-13). The Court first dispenses with the notion that Wilson's opinion is devoid of "any study or analysis." (Pl.'s Mot. 12). TVA itself argues that Wilson improperly relied on agricultural studies and cannot concurrently assert that Wilson relied on no studies whatsoever. (Pl.'s Mot. 12-13). Wilson's testimony is admissible because he properly utilized accepted principles and methods to the facts of this case. Kentucky

5

courts measure permanent damage to real estate by the difference in the fair market value of the real estate immediately before and after the injury. *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 607 (Ky. App. 2003); *see Smith v. Carbide & Chems. Corp.*, No. 5:97-cv-3, 2009 WL 5184342, at *2 (W.D. Ky. Dec. 22, 2009). Further, "[d]etermining the before-and-after value of real estate is an art, not a science." *Adler*, 986 F. Supp. 2d at 860 (citation omitted). One common appraisal method involves a comparison of "the fair market value of 'comparables' on the basis of the sale transactions." *Younglove Constr., LLC v. PSD Dev., LLC*, 782 F. Supp. 2d 457, 459 (N.D. Ohio 2011). "In other words, an appraiser typically looks at how comparable properties fared on the market in order to estimate the value of the subject property." *Adler*, 986 F. Supp. 2d at 860.

    Wilson testified he a methodology similar to accepted methods. Like the appraisers in *Tosh* and *Adler*, Wilson inspected the Property and compared it to sales of other properties in the area. *Tosh*, 942 F. Supp. 2d at 690; *Adler*, 986 F. Supp. at 860. Wilson then used his inspection and research to determine the value of the Property and determine the value of the acreage taken by TVA. (Pl.'s Mot. Ex. 3, at 6, DN 25-3). As a result, Wilson calculated the lost acreage was valued at $256,000. (Pl.'s Mot. Ex. 3, at 6). This sales-comparison methodology is an accepted method in the field that satisfies the requirements of Rule 702. *Tosh*, 942 F. Supp. 2d at 690; *Adler*, 986 F. Supp. 2d at 860. Further, Wilson did in fact rely on studies—albeit studies based on agricultural property—to assist him in determining damages. (Pl.'s Mot. 13-14). Plaintiff is free to attack the credibility of Wilson for using such studies, but exclusion of Wilson's opinion on this basis is inappropriate.

    The fact that Wilson's testimony is admissible is of course not to say his appraisal is correct. A jury very well may find Wilson's appraisal to be inadequate for the reasons cited by Plaintiff. These purported deficiencies may affect the credibility of Wilson's testimony—not its

admissibility—and are therefore not preclusive. *Cf. Hogan v. United States*, 407 F.3d 778, 782 (6th Cir. 2005). Robust cross-examination may reveal defects in Wilson's appraisal, which could affect the weight attributed to his opinions by a jury. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987))). TVA's arguments, however, are simply insufficient to justify the exclusion of Wilson's testimony in its entirety. Instead, it will by the jury's task to evaluate Wilson's opinions on their own merit and in comparison to the other experts and evidence presented at trial. That is the jury's job, not the Court's. Accordingly, the Court will deny TVA's motion and permit Defendants to introduce Wilson's testimony at trial.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Exclude Testimony of Defendants' Retained Expert, Steve J. Wilson (DN 25) is **DENIED.**

**Greg N. Stivers, Judge**
**United States District Court**
December 18, 2015

cc: counsel of record